**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Annastaisha Lyons, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>Mesa Public School District, et al.,<br><br>    Defendants. | No. CV-19-05880-PHX-GMS<br><br>**ORDER** |

Before the Court is Defendant Mesa Public School District's ("the District") Motion for Summary Judgment, (Doc. 88), and Defendant Joshua A. Bribiescas's ("Defendant Bribiescas") Motion for Summary Judgment, (Doc. 90.) Defendant Bribiescas further joins the District's Motion for Summary Judgement regarding Plaintiffs' loss of consortium claims. (Doc. 92.) For the following reasons, both Motions are granted in part and denied in part.

## BACKGROUND

Plaintiff Annastaisha Lyons ("Plaintiff AL") was seventeen years old during the 2018-2019 school year. She was a junior in high school and a junior varsity basketball player at Dobson High School in the Mesa Public School District. (Doc. 89 at 2); (Doc. 99 at 2.) Defendant Kyler Ashley ("Defendant Ashley") was the school's junior varsity basketball coach. Defendant Bribiescas was an assistant junior varsity basketball coach. (Doc. 89 at 2); (Doc. 99 at 2.)

Between approximately August and December 2018, Defendant Ashley and Plaintiff AL had several sexual encounters. Plaintiffs allege that Defendant Bribiescas was aware of these encounters. (Doc. 99 at 4.)

In May 2019, Defendant Ashley was arrested for attempting to initiate an inappropriate relationship with another student. (Doc. 89 at 2); (Doc. 99 at 2.) In an interview with police, Defendant Ashley admitted to sexual encounters with two other students, including Plaintiff AL. He ultimately pled guilty to four counts, including three counts of attempted sexual conduct with a minor and one count of luring a minor for sexual exploitation. (Docs. 89 at 3); (Doc. 99 at 2.) Plaintiffs brought suit in December 2019, alleging violations of the Fourteenth Amendment; Title IX; and Common Law Failure to Protect, Assault and Battery, Intentional Infliction of Emotional Distress, Loss of Consortium, and Negligence. (Doc. 1.)

# DISCUSSION

## I. Legal Standard

The purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Parties opposing summary judgment are required to "cit[e] to particular parts of materials in the record" establishing a genuine dispute or "show[ ] that

the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). A district court has no independent duty "to scour the record in search of a genuine issue of triable fact[.]" *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

## II.     The District's Motion for Summary Judgment

### 1. Section 1983

Under § 1983, a municipality cannot be held liable for the acts of its employees based solely on a respondeat superior theory. Rather, municipalities are only responsible for "their *own* illegal acts." *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986). Further, "to establish municipal liability, a plaintiff must show that a 'policy or custom' led to the plaintiff's injury." *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1073 (9th Cir. 2016) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). "[I]n some circumstances[,] a policy of inaction, such as a policy of failing to properly train employees, may form the basis for municipal liability." *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1234 n.8 (9th Cir. 2011). In other words, "a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To prove a failure to train claim under § 1983, the plaintiff must show that "(1) the existing training program is inadequate in relation to the tasks the particular officers must perform; (2) the failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] came into contact; and (3) the inadequacy of the training actually caused the deprivation of the alleged constitutional right." *Hollandsworth v. City & Cnty. of Honolulu*, 440 F. Supp. 3d 1163, 1181 (D. Haw. 2020) (citing *Merritt v. Cnty. of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989)).

### a. Adequacy of Training

Plaintiffs have established a genuine issue of material fact as to whether the District provided adequate training on mandatory reporting to part-time coaches. The District argues that because it has a written policy, requires employees to watch a video on mandatory reporting, and requires employees to sign statements of awareness of school

policies, Plaintiffs have failed to establish a genuine issue of material fact. (Doc. 106 at 4); (Doc. 89-2 at 5–6.) However, as Plaintiffs point out, the District was unable to produce a statement of awareness for either Defendant Bribiescas or Defendant Ashley. (Doc. 99-2 at 16); (Doc. 99 at 4.). Moreover, Mr. Moore, the Director of School Safety, provided the District's cited testimony as to the statement of awareness but also explicitly stated that he did not train part-time employees, including coaches. (Doc. 99-2 at 22–24.) In addition to the missing statements of awareness, Defendant Bribiescas testified that he was never trained on his duties as a mandatory reporter.[1] (Doc. 99-2 at 9–10.) Mr. Mohn, the Athletic Director, testified that he never talked with Defendant about his duties as a mandatory reporter. (Doc. 99-6 at 16); (Doc. 98 at 17.) Henry Bribiescas ("Coach Bribiescas"), the varsity basketball head coach, testified that he did not know of any training other than what he provided that part-time coaches would have received. (Doc. 99-5 at 26-27, 30–31). The District conceded as much at oral argument, when it stated that "the training was provided from district and school-level administrators to head coaches to assistant coaches."[2] But Coach Bribiescas testified that his job was not to train the coaches but to "go over what we're going to do for the season, what it is, expectations." (Doc. 99-5 at 26.)[3] Although a close issue, the Court finds that Defendant Bribiescas's testimony, the lack of a statement of awareness for both Defendant Bribiescas and Defendant Ashley, and the testimony of Mr. Moore, Mr. Mohn, and Coach Bribiescas about the District's mandatory reporting training is sufficient for a jury to reasonably believe that part-time coaches were not properly trained on their duties as mandatory reporters. Therefore, based on the foregoing,

---

[1] Although Defendant Bribiescas did admit that he knew he was a mandatory reporter in the police interview, there is some conflict as to whether he was aware at the time he learned of Defendant Ashley's conduct. (Doc. 89-1 at 40–41); (Doc. 99-2 at 10–11.)

[2] At oral argument, the District asserted that Coach Bribiescas provided mandatory reporter training to the basketball coaches. However, aside from some vague references to "bullet points" he provided the coaches, which may have covered mandatory reporting, the Court could find no specific support for this assertion in the record. (Doc. 99-5 at 26.) But even assuming that Coach Bribiescas testified that he provided such training, Defendant Bribiescas's testimony that he did not receive training, and the lack of a statement of awareness, still creates an issue of fact that must be decided by a jury.

[3] Notably, Coach Bribiescas testified that coaches received less training on safety than teachers. (Doc. 99-3 at 13.)

Plaintiffs have created a genuine issue of material fact.

### b. Deliberate Indifference

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* (quoting *Bd. of Cnty. Cmm'rs v. Brown*, 520 U.S. 397, 409 (1997)). However, such a pattern is not always necessary: "it may happen that in light of the duties assigned to specific officers or employees[,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). For example, in light of the "moral certainty" that police officers will be armed and confronted by fleeing felons, the failure to train police officers on the "constitutional limits on the use of deadly force could reflect the city's deliberate indifference to [a] 'highly predictable consequence.'" *Connick*, 563 U.S. at 63–64; *Canton*, 489 U.S. at 390 n.10.

"Whether a local government has displayed a policy of deliberate indifference to the constitutional rights of its citizens is generally a jury question." *Berry v. Boca*, 379 F.3d 764, 769 (9th Cir. 2004). Here, there is a genuine issue of material fact as to whether the District's alleged failure to train assistant coaches on mandatory reporting amounts to deliberate indifference to a "highly predictable consequence."[4] *Connick*, 563 U.S. at 63-64. One district court has stated that whether sexual harassment was an obvious consequence of a failure to train on reporting requirements is a "close question." *Wadsworth v. Me. Sch. Admin. Dist. 40*, No. 2:19-cv-00577-JAW, 2020 WL 6370725, at *19 (D. Me. Oct. 29, 2020). Because the "failure to train school employees about how to report sexual harassment will almost certainly result in a circumstance of sexual harassment being reported incorrectly and not handled quickly or at all," the risk may be sufficiently obvious

---

[4] For the purposes of summary judgment, the District has conceded an underlying constitutional violation. (Doc. 88 at 5.)

that the lack of training amounts to deliberate indifference. *Id.* Another district court has stated that a "school district's alleged failure to train employees to handle sexual harassment claims . . . could make the violation of one's federal rights a highly foreseeable outcome" and "increase[ ] the likelihood that sexual harassment [will] go unchecked and possibly become recurrent and predictable so as to suggest that a failure to train reflects deliberate indifference." *E.N. v. Susquehanna Twp. Sch. Dist.*, No. 1:09–CV–1727, 2011 WL 3608544, at *7 (M.D. Pa. July 5, 2011); *cf. C.R. v. Novi Comm. Sch. Dist.*, No. 14-14531, 2017 WL 528264 (E.D. Mich. Feb. 9, 2017) ("Peer-on-peer sexual harassment is clearly a foreseeable consequence of failing to provide teachers training on sexual harassment. Consequently, the inadequacy of [Defendant's] training could be said to be the result of the district's deliberate indifference because this harmful foreseeable consequence could result from a lack of instruction.").

Here, Defendant Ashley assaulted Plaintiff AL approximately five times. (Doc. 88 at 2). Defendant Ashley also assaulted two other basketball players and eventually pleaded guilty to four criminal charges related to his sexual contact with the players. (Doc. 88 at 2-3.) If, as Defendant Bribiescas told police, he knew of Defendant Ashley's inappropriate conduct with players before he knew of his relationship with Plaintiff AL, (Doc. 99-2 at 11), then Defendant Bribiescas would have illegally ignored the violation of students' rights *at least* two times—once with the prior student and once with Plaintiff AL.[5] However, even assuming that these incidents do not establish a "pattern" of conduct, they are sufficient to establish an issue of fact for a claim of single-incident liability—where the municipality has ignored "a highly predictable consequence" of its failure to train.[6]

---

[5] Defendant Bribiescas is currently charged with two counts of violating the mandatory reporting statute. (Doc. 89-1 at 36.)

[6] This case is unlike *Connick*, in which the Supreme Court held that prosecutors did not need special training on *Brady* violations because their legal education would have informed them of their duties under *Brady*. 563 U.S. at 63–67. Coaches, like the police officers in *Canton*, are lay people and do not have specialized educations to inform them of their duties under the law, and as such must be trained in order to avoid the risk of foreseeable harm. *Id.*; *see also* 489 U.S. at 389–90.

- 6 -

*Connick*, 563 U.S. at 64. As noted by the district courts cited above,[7] the failure to train employees on reporting requirements creates a risk that abuse will go unreported; indeed, this is the very purpose of mandatory reporting laws and is why forty-seven states have such laws for professionals who have frequent contact with children.[8] It is thus foreseeable that the District's failure to train coaches on mandatory reporting will result in unreported abuse, an act that occurred repeatedly in this case. Plaintiffs have established a genuine issue of material fact as to whether the District's failure to train amounted to a deliberate indifference to a known or obvious risk to constitutional rights.

### c. Causation

Plaintiffs have also established a general issue of material fact as to whether the District's failure to train Defendant Bribiescas caused the violation of constitutional rights. To show causation, the Plaintiffs must demonstrate "that the constitutional injury would not have resulted if the municipality properly trained their employees." *Benavidez v. Cnty of San Diego*, 993 F.3d 1134, 1153–54 (9th Cir. 2021). Defendant Bribiescas admitted to the police that he knew of Defendant Ashley's relationship with a prior student before Defendant Ashley ever began a relationship with Plaintiff AL. (Doc. 99-2 at 11.) Therefore, had Defendant Bribiescas known of his duty to report, he could have reported Defendant Ashley based on his prior relationship with a student, and Defendant Ashley's relationship with Plaintiff AL would never have commenced. In short, if Defendant Bribiescas had been trained, Plaintiff AL's constitutional rights would not have been violated. Because a jury could believe Defendant Bribiescas's statements as to when he learned of Defendant Ashley's conduct, Plaintiffs have established a genuine issue of material fact as to whether the District's failure to train caused the violation of Plaintiff AL's rights.

Because Plaintiffs have established a genuine issue of material fact as to all elements, the District's Motion for Summary Judgment is denied as to Plaintiffs' failure to

---

[7] *Wadsworth*, 2020 WL 6370725, at *19; *Susquehanna Twp. Sch. Dist.*, 2011 WL 3608544, at *7.

[8] Child Welfare Info. Gateway, *Mandatory Reporters of Child Abuse and Neglect* 2 (2019), https://www.childwelfare.gov/pubpdfs/manda.pdf.

train claim.

### 2. Title IX

Like § 1983, a funding recipient is only liable for its own misconduct under Title IX. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 640 (1999). In the Ninth Circuit, a plaintiff alleging a Title IX claim against a school for faculty-on-student sexual harassment or assault must prove five elements:

> First, the school must have "exercise[d] substantial control over both the harasser and the context in which the known harassment occur[red]." Second, the plaintiff must have suffered harassment "that is so severe, pervasive, and objectively offensive that it can be said to deprive the [plaintiff] of access to the educational opportunities or benefits provided by the school." Third, a school official with "authority to address the alleged discrimination and to institute corrective measures on the [school's] behalf" must have had "actual knowledge" of the harassment. Fourth, the school must have acted with "deliberate indifference" to the harassment, such that the school's "response to the harassment or lack thereof [was] clearly unreasonable in light of the known circumstances." . . . And fifth, the school's deliberate indifference must have "subject[ed] the [plaintiff] to harassment."

*Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1105 (9th Cir. 2020).

Here, Plaintiffs have failed to rebut the District's assertion that no appropriate person with authority to act on behalf of the District had actual knowledge of the assaults. Although Plaintiffs allege that Defendant Bribiescas had knowledge of the assaults, they present no evidence that he had authority to rectify the abuse on behalf of the District or the school. Defendant Bribiescas's obligations as a mandatory reporter do not render him a person with authority to act. An obligation to report to *other* authorities does not prove anything about Defendant Bribiescas's own power to act to rectify the abuse within the school. *See Ross v. Univ. of Tulsa*, 859 F.3d 1280, 1290 (10th Cir. 2017) ("[M]erely passing on a report of sexual harassment to someone authorized to take corrective action is not itself corrective action."). Because Plaintiffs' assertions regarding Defendant Bribiescas's authority are limited to his power to report abuse, they have failed to establish that a school official with authority to address the alleged discrimination and institute corrective

measures on the school's behalf had actual knowledge of the harassment. *See Pantastico v. Dep't of Educ.*, 406 F. Supp. 3d 865, 874 (D. Haw. 2019) ("[T]here is no indication that Palipti, as an assistant coach, had the "authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf."). The District's Motion for Summary Judgment on Plaintiffs' Title IX claim is thus granted.

### 3. Ariz. Rev. Stat. § 12-820.05

Pursuant to A.R.S. § 12-820.05(B), where a public employee commits a felony, a public entity can only be liable for the act if it had knowledge of the employee's propensity for that action. Section 12-820.05(B) provides:

> A public entity is not liable for losses that arise out of and are directly attributable to an act or omission determined by a court to be a criminal felony by a public employee unless the public entity knew of the public employee's propensity for that action. This subsection does not apply to acts or omissions arising out of the operation or use of a motor vehicle.

A.R.S. § 12-820.05(B).

No Arizona Court has interpreted the vehicle exception, but federal courts have read the law to require a causal connection between the harm at issue and the vehicle. *See Garcia v. Garibay*, No. CIV 12-929 TUC FRZ, 2013 WL 1442505, at *4 (D. Ariz. Apr. 9, 2013). Such a construction is further supported by Arizona law interpreting the phrase "operation or use of" to define the scope of vehicle insurance policies. *See Love v. Farmers Ins. Grp.*, 121 Ariz. 71, 74, 588 P.2d 364, 367 (Ct. App. 1978); *see also Ruiz v. Farmers Ins. Co. of Ariz.*, 177 Ariz. 101, 103–04, 865 P.2d 762, 764–65 (1993).

Here, the parties do no dispute that Defendant Ashley's sexual conduct with a minor victim was a felony. A.R.S. §§ 13-1405, 3554. Plaintiffs point to no evidence that the District knew of Ashley's propensity for that action. Accordingly, the statute immunizes the District from liability for Ashley's felony.[9]

The vehicle exception does not apply to this case because the assaults did not arise

---

[9] Even to the extent that Plaintiffs assert the District is liable for Defendant Bribiescas's conduct, the Plaintiffs' harm still arises out of Ashley's felony, and failing to report a sexual assault of minor is itself a felony act.

out of the operation or use of a motor vehicle. That a vehicle was the location of some of the acts does not render it the cause of the victim's injuries. *See Garcia*, 2013 WL 1442505, at *4 ("[H]ere, while the sexual conduct may have taken place in a vehicle, use of the vehicle did not cause her injury. Accordingly, her loss did not 'arise[ ] out of the operation or use of a motor vehicle.'") (quoting A.R.S. § 12-820.05); *Love*, 121 Ariz. at 73–74, 588 P.2d at 366–67 (finding, when construing a similar insurance provision, no "use" of a car when the victim was kidnapped in the vehicle and beaten with a candelabrum found in the car). The District is thus immune from liability as to Plaintiffs' common law claims against the District: Common Law Failure to Protect, Common Law Loss of Consortium, and Respondeat Superior Liability for either.

### 4. Loss of Consortium

"Loss of consortium . . . is defined as a loss of capacity to exchange love, affection, society, companionship, comfort, care and moral support." *Pierce v. Casas Adobes Baptist Church*, 162 Ariz. 269, 272, 782 P.2d 1162, 1165 (1989). Parents may bring "a cause of action for loss of their child's consortium when the child suffers a severe, permanent, and disabling injury that substantially interferes with the child's capacity to interact with his parents in a normally gratifying way." *Id.* The Arizona Supreme Court has specified, however, that the need for a severe, permanent, or disabling injury does not limit loss of consortium claims to injuries that nearly destroy the parent child relationship. *Id.* at 273; 782 P.2d at 1166. "Although evidence of a significant interference in the parent-child relationship must exist, the injury need not be the functional equivalent of death or even be categorized as 'catastrophic.'" *Id.* at 272; 782 P.2d at 1165. "The focus of the trial court's inquiry is on the interference with the normal relationship between parent and child." *Miller v. Westcor Ltd. P'ship*, 171 Ariz. 387, 831 P.2d 386, 395. Before a loss-of-consortium claim may be presented to a jury, "[w]hether the threshold of a significant interference with the normal relationship between parent and child has been met is a question of law for the judge to determine." *Pierce*, 162 Ariz. at 272, 782 P.2d at 1165.

Plaintiffs have not demonstrated there is a triable issue as to their loss of consortium

claim. In support of their claims, Plaintiffs' Statement of Facts alleges that (1) "PTSD symptoms can last a lifetime," (2) Plaintiff AL "specifically testifies that her relationship will never be the same with her father, among others and that she will have issues for the rest of her life," and (3) that "Mr. Lyons said he noticed changes in [AL]'s personality over the year that the abuse was ongoing, that worsened right after the arrest and prosecution became public." (Docs. 98 at 3; 99-6 at 19, 21.) Only Plaintiffs' final assertion, regarding Mr. Lyons noticing changes in Plaintiff AL's personality, is supported by any citation to the record.[10] *See Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (explaining that district court has no independent duty "to scour the record in search of a genuine issue of triable fact[.]"). Even assuming support for Plaintiffs' statement of facts, however, these assertions shed little light on whether the abuse substantially interfered with the Plaintiffs' parent–child relationship. The bare allegation that their relationship changed, without evidence that the change created a substantial impact on their normal parent–child relationship, does not create a genuine issue of material fact. The Court thus grants Defendant Bribiescas's Motion for Summary Judgment on Plaintiffs' loss of consortium claims.

### III. Defendant Bribiescas's Motion for Summary Judgment

#### 1. Section 1983

To succeed on a § 1983 claim, a plaintiff must show that she was deprived of a federal constitutional or statutory right. *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011). However, as a general rule, the Constitution does not guarantee any affirmative right to government aid or protection from third parties. *Id.*; *see Morgan v. Gonzales*, 495

---

[10] Plaintiffs alleged at oral argument that support for the loss of consortium claim could be found in Plaintiffs' affidavits. However, the affidavits are both dated April 13, 2021. (Doc. 99-6 at 19–22), and were first provided to Defendant in connection with Plaintiffs' Response to Defendant's Motion for Summary Judgment. The relevant facts had not been disclosed by Plaintiffs in support of their consortium claim prior to the discovery cut-off. The deadline for the close of fact discovery was November 16, 2020, (Doc. 36 at 2 & n.1), which was extended only to depose Plaintiffs and Defendant Bribiescas. (Doc. 82; Doc. 62.) Pursuant to the Mandatory Initial Disclosure Pilot Project and this Court's Scheduling Order, Plaintiffs were required to disclose ESI or hard documents relevant to any party's claims or defenses by the close of fact discovery. (Doc. 36 at 2); D. Ariz. G.O. 17-08 at 3-6. Because Plaintiffs did not disclose these affidavits by that date, the Court need not consider them on summary judgment. D. Ariz. G.O. 17-08 at 4; Fed. R. Civ. P. 37(b)(2).

F.3d 1084, 1092 (9th Cir. 2007) ("As a general rule, the government is not liable for the actions of third parties."). "There are two exceptions to this rule: (1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the state-created danger exception)." *Patel*, 648 F.3d at 971–72 (internal citation omitted) (quoting *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir.1996)).

Plaintiffs allege that the state-created danger exception establishes that Plaintiffs' federally protected rights were violated. For the state-created danger exception to apply, the state must (1) engage in affirmative conduct that places the plaintiff in danger; and (2) act "with deliberate indifference to a known or obvious danger." *Id.* at 974.

First, to determine whether an actor affirmatively placed an individual in danger, courts examine whether the individual "left the person in a situation that was more dangerous than the one in which they found [her]." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir. 2000). Second, deliberate indifference to a known or obvious danger requires a "culpable mental state." *Patel*, 648 F.3d at 974. "The state actor must 'recognize[ ] [an] unreasonable risk and actually intend[ ] to expose the plaintiff to such risks without regard to the consequences to the plaintiff.'" *Id.* (alteration in original).

Plaintiffs present no evidence of affirmative conduct that renders Defendant Bribiescas responsible for Defendant Ashley's actions. Their assertions that, because Defendant Bribiescas was present when Defendant Ashley escorted Plaintiff AL to his vehicle, he condoned the abuse and gave Plaintiff AL the impression that the "scenario was appropriate," does not allege any affirmative conduct. "[A] state actor cannot affirmatively place an individual in danger merely by failing to act, regardless of how reprehensible that failure may be." *J.K. v. Ariz. Bd. of Regents*, No. CV06-916-PHX-MHM, 2008 WL 4446712, at *5 (D. Ariz. Sept. 30, 2008); *see Johnson v. City of Seattle*, 474 F.3d 634, 641 (9th Cir. 2007) (holding that a state official's decision to switch from an aggressive operation plan to a more passive one "was not affirmative conduct that placed the . . .

[p]laintiffs in danger, because it did not place them in any worse position than they would have been in had the police not come up with any operational plan whatsoever"). As Plaintiffs allegations focus on Defendant Bribiescas's inaction as a basis for liability, Defendant Bribiescas's Motion for Summary Judgment on Plaintiffs' § 1983 claim is granted.

### 2. Negligence

To maintain a negligence action, a plaintiff must establish that the defendant had a legal duty to protect the plaintiff from injury or harm. *Stanley v. McCarver*, 208 Ariz. 219, 221, 92 P.3d 849, 851 (2004). Such a duty may arise from the relationship between the parties. *Id.* Under Arizona law, the duty of care for the student–school relationship "is bounded by geography and time, encompassing risks such as those that occur while the student is at school or otherwise under the school's control." *Monroe v. Basis Sch., Inc.*, 234 Ariz. 155, 157–58, 318 P.3d 871, 873–74 (Ct. App. 2014) (citing Restatement (Third) of Torts: Phys. & Emot. Harm § 40(b), cmt.f, l (2012)).

Here, Defendant Bribiescas asserts that he did not have a duty to prevent Plaintiff AL's harm because the assaults occurred off-campus and after practices or games. Plaintiffs, however, present evidence that Defendant Ashley's inappropriate conduct also occurred on campus. In her deposition, Plaintiff AL testified that Defendant Ashley slapped her buttocks several times during basketball practice. (Doc. 99-1 at 3–4.) This allegation that at least a portion of the misconduct occurred on-campus rebuts Defendant Bribiescas's assertion that he had no duty because the conduct was wholly off-campus. Defendant Bribiescas's motion for Summary Judgment on Plaintiffs' negligence claim is thus denied.

### CONCLUSION

For the reasons set forth above, both Motions for Summary Judgment are granted in part and denied in part.

**IT IS THEREFORE ORDERED** that Defendant Mesa Public School District's Motion for Summary Judgment, (Doc. 88), is **GRANTED** in part and **DENIED** in part. The District's Motion is granted as to the Title IX claim, Count III; the common law claims,

Counts V, VI, and X; and denied as to § 1983 liability, Count II.

**IT IS FURTHER ORDERED** that Defendant Joshua A. Bribiescas's Motion for Summary Judgment, (Doc. 90), is **GRANTED** in part and **DENIED** in part. Defendant Bribiescas's Motion is granted as to § 1983 liability, Counts II and IV, and denied as to negligence.

**IT IS FURTHER ORDERED** that Defendant Joshua A. Bribiescas's Joinder in Mesa Public School District's Motion for Summary Judgment, (Doc. 92), is **GRANTED**. Defendant Bribiescas's Motion is granted as to Plaintiffs' loss of consortium claims.

Dated this 30th day of September, 2021.

*G. Murray Snow*
G. Murray Snow
Chief United States District Judge